## MARY C. ADAMS *v.* WM. D. BLODGETT.

Where the gist of the action is the disturbance to plaintiff's possession, whatever was done after the breaking and entry is but the aggravation of damages.

The plaintiff may properly elect any day prior to the date of her writ, as the *time* when the defendant forcibly entered upon her land, and converted her bark to his own use, and the defendant may be called on to pay the highest market value, at the place of the conversion, for the property taken, with interest thereon from the time of the taking to the day of the trial by the jury.

Damages may be arrived at by the jury by making a fair average of the sales, made near the time and place of the conversion, and both before and after the taking.

Upon the question of boundary, the acts and declarations of a surveyor while surveying an adjoining lot, are admissible; the said surveyor having deceased, and having no interest to misrepresent at the time of such survey.

What such surveyor did and said at the time he found the corner of plaintiff's lot may be regarded as something more decisive than the expression of a mere naked opinion.

TRESPASS, for breaking and entering the plaintiff's close in Plymouth, known as the Libb lot, being lot No. 1 in the second range and second division of lots in said town, and carrying away hemlock and spruce trees, hemlock bark, &c.

It appeared that the bark in question was peeled by the defendant and cured on the premises in dispute, in the summer of 1863 ; that the defendant bargained the same to one Moses Pike, in October, 1863, to be delivered at Quincy station, in Rumney, during the following winter ; that the bark was delivered at said Quincy station in February, 1864. Said Pike did not have the bark, but the defendant afterward sold the same to another man. As bearing on the question of damages in this case, the plaintiff was allowed to show the prices at which bark was sold at said Quincy station between October, 1863, and May, 1864, the price continuing to advance during that time ; and the defendant excepted, his objection being that it was not competent to show the price of bark at any other time than at the time of the conversion. The court instructed the jury that the measure of damages was the value of the property at the time of the conversion ; that it was their province to find when the conversion was, if there had been one, and that they might consider the evidence as to the price of bark at different times, in finding the value of the same at the *time* of the *conversion.*

Lot No. 2 in said second range was directly south of lot No. 1, and there was no controversy but that the northeast corner of lot 2 was the southeast corner of lot 1, and one side contended that lot 1 extended as far west as lot 2, and that the northwest corner of lot 2 was the southwest corner of lot 1 ; but the other side contended that lot 1 was shorter than lot 2, and that the southwest corner of lot 1 was some distance farther east than the northwest corner of lot 2. Henry Wells, a witness for the plaintiff, testified that, twenty years ago or more, he assisted one Jonathan Cummings, a surveyor, in running out the lines of said lot 2 ; that they begun at the northeast corner of said lot 2, and run west to the northwest corner of the same lot ; but there being some snow on the ground no monument was at first found marking the corner ; but upon examination a spruce tree, down and much decayed, was

found at the corner, and the witness found two pieces of said tree, one of which pieces the witness produced in court, and exhibited to the court and jury, with the marks upon it, and described the other piece as simi- lar, and with similar marks upon it, except that one was marked I, and the other II, and described the marks on both pieces as of like charac- ter, and as having the appearance of having been made with a marking *iron*, which said marks were at the time examined by witness, and by said Cummings. The witness was sixty years old at the time of trial, and testified that he had known of said Cummings surveying lands in that part of the town ever since he could remember, down to the time of that survey of lot 2, and that said Jonathan Cummings had since died. It did not appear whether said Cummings ever surveyed either of said lots, No. 1 or No. 2, before or not. It also appeared that said Cummings was not interested in either of these lots, 1 and 2. The wit- ness was permitted to state, the plaintiff excepting, that on said survey of lot 2, said Cummings stated to the witness that the spruce tree which the witness had found as aforesaid, was the corner of lots Nos. 1 and 2.

Joshua Penniman, a witness for the plaintiff, contradicted the defend- ant on some material points. On cross-examination, the defendant was allowed to inquire and show, if he could, that the witness had made other statements conflicting with his statements on the stand. The de- fendant then proposed to show by the witness that he (witness) was poor, and was dependent upon others for his support, and was in their interests ; which testimony the court excluded and the defendant except- ed ; but the court allowed the defendant to inquire fully of the witness as to his relations with and feeling toward the defendant, whether friend- ly or otherwise, and whether the plaintiff, or any one in his behalf, had made any attempt to influence his statements on the stand.

The questions of law thus raised were reserved.

*Burrows & Pike*, for plaintiff, upon various points connected with the time of the taking the bark, and its value, referred to the following authorities : *Groming* v. *Wilkinson*, 1 Car. & P. 625 ; *Whitehouse* v. *Atkinson*, 3 Car. & P. 344. As to the rule of damages in New York, *Baker* v. *Wheeler*, 8 Wendell 508 ; *West* v. *Wentworth*, 3 Cowan 82 ; *Clark* v. *Penney*, 7 Cowan 681 ; *Randin* v. *Barton*, 4 Texas 289 ; *Carmin* v. *Folsom*, 2 Iowa 201 ; *Wilson* v. *Matthews*, 24 Barbour 295 ; *Suydam* v. *Jenkins*, 3 Sandford 614.

2. Upon the admissibility of the testimony of Wells, as to the state- ment of Cummings, the surveyor, when pointing out the corner of the lot, *Shepard* v. *Thompson*, 4 N. H. 214 ; *Smith* v. *Powers*, 15 N. H. 546 ; *Spear* v. *Coate*, 3 McCord. 227 ; *Blyth* v. *Sutherland*, 3 McCord. 238 ; Kentucky Rep., *Smith* v. *Noble*, 2 Little 159.

In the present case, the declarations of Cummings were not his opin- ions, but *facts*, derived from his knowledge as a surveyor, and nothing like the loose opinions rejected in *Wallace* v. *Goodall*, 18 N. H. 453.

*Clark & Bingham*, for defendant, contended, that in the action of trespass, *quare clausum*, in assessing the damages for the plaintiff, the

jury were to regard the value of the thing severed from the realty, immediately upon its severance, as the test of its true value, and not its value at any other time or place. *Cushing* v. *Longfellow*, 26 Maine 306 ; *Martin* v. *Porter*, 5 M. & W. 351 ; *Weld* v. *Holt*, 9 M. & W. 672 ; *Loker* v. *Damon*, 17 Pick. 288 ; *Longfellow* v. *Quimby*, 29 Maine 196 ; 33 Maine 457.

2.  That it was competent for surveyors to testify as experts, and give their opinions, whether or not certain monuments were boundaries. *Peterborough* v. *Jaffrey*, 6 N. H. 464 ; *Barron* v. *Cobleigh*, 11 N. H. 566.  But that it was incompetent to receive the declarations of deceased experts on questions of boundary. *Wallace* v. *Goodall*, 18 N. H. 453.

NESMITH, J.  This was trespass, *quare clausum fregit*, wherein the defendant is charged with breaking and entering plaintiff's close, situate in Plymouth, in this county, being lot No. 1, in the second range and second division of lots in said town, and with force, &c., cutting and carrying away plaintiff's trees and hemlock bark.  The plaintiff's writ is understood to have been dated in March, A. D. 1864.  The declaration stated the time of the wrongful entry and injury to plaintiff at some time prior to the date of the writ.  The *gist* of this action is the disturbance or violation of plaintiff's possession.  If plaintiff's land be illegally entered, a cause of action at once arises.  Whatever is done after the breaking and entry is but aggravation of damages.  *Brown* v. *Manter*, 22 N. H. 468 ; *Ferrin* v. *Symonds*, 11 N. H. 365.

The defendant offers no justification or license, and the verdict of the jury is found against him.  The questions made here have reference to the charge of the judge.

1.  As to the damages, or price of the hemlock bark taken by defendant.  The plaintiff may properly elect any day prior to the date of her writ, as the *time* when the defendant wrongfully and forcibly entered upon her land and carried away and converted to his use the hemlock bark complained of, and the defendant cannot find fault if he be called upon to pay the highest market value of the bark at such time.  Such is the elementary rule, where the trespass asked is not laid with a continuando.  1 Espenasse N. P. 407 ; Buller N. P. 86.  And in trespass as well as trover, the plaintiff is not only entitled to recover the market value of the property at the time of the conversion, but also the *interest* thereon from that time to the time of the rendition of the verdict, as a measure of indemnity, or as additional damages, and in one case the jury were instructed also to consider, in addition to the value of the timber taken, the deterioration of the land, caused by its removal. *Wallace* v. *Goodall*, 18 N. H. 439.

We think the court, according to the amendment furnished to the case, gave the right rule of damages to the jury.  In getting at the true value of the bark, it might be impossible to show sales on the lot where it was peeled, hence it was well to go to the place of delivery, where a price had been established by sales ; or to a neighboring station on the railroad, where similar sales of bark are presumed to have been made.

So, as to time, when this bark was' actually hauled off from plaintiff's land, being the true time of its conversion by the defendant, there may not have been any sales of this commodity in that vicinity, at or near that time. It occurs to us, a fair average price might be arrived at by the jury, by showing evidence of what the price of bark was, in that vicinity, at different times, both before and after the alleged time of conversion. It is well known to be a kind of property which fluctuates in value or price, from year to year, and from one part of the same year to another. We do not see how the defendant could be prejudiced by the charge of the court on this point, and think the ruling may be properly sustained.

2. In cases of mere private rights, the declarations of deceased persons, who were so situated as to have the means of knowledge, and had no interest to misrepresent, are competent evidence to prove an ancient boundary. *Shepard* v. *Thompson*, 4 N. H. 213 ; *Lawrence* v. *Haynes*, 5 N. H. 37 ; *Great Falls Manuf. Co.* v. *Worcester*, 15 N. H. 412 ; *Smith* v. *Powers*, 15 N. H. 546 ; *Melvin* v. *Marshall*, 22 N. H. 381 ; *Adams* v. *Stanyan*, 24 N. H. 405.

Justice Bell remarks, in giving his opinion in one of the above cases, that the admissibility of this kind of proof is not now an open question. It is admitted as traditionary evidence, or secondary in its character, and as the best the case admits of. "Inscriptions on walls, and fixed tables, mural monuments, grave stones, *surveyors' marks on boundary trees*, &c., which, as they cannot be conveniently brought into court, may be proved by secondary evidence." 1 Greenleaf's Evid. sec. 94. But when they can be brought into court their actual production is required, according to the English rule of evidence, as stated in the cases referred to, in note to the aforesaid section. *Vide*, also, *note and additional authorities*, in 1 Greenl. Ev. sec. 145.

In the opinion of Chief Justice Perley, in the case *Melvin* v. *Marshall*, he states, that in *Prescott* v. *Hawkins*, 22 N. H. 191, a witness for the plaintiff testified that a deceased surveyor of Holderness, who was understood to have made the original survey and division of that town, went to the spot and pointed out a boundary as the corner of a certain lot, and the evidence was held in this court to be competent.

So, also, in *Van Deusen* v. *Turner*, 12 Pick. 532, it was held, that, upon a question of boundary, the declaration of a deceased person, who pointed out a *line* of *marked trees*, *declaring* it was a known division line, was admissible in evidence as part of the *res gestæ*. The court in that case say, had the deceased been requested to go and point out the line, and he had done it without any declaration whatever, it would have been an act of the same character, and admissible upon the same principle.

Now, to apply the law to the facts of this case. We find Jonathan Cummings, an experienced land surveyor, making a survey many years ago of lot No. 2, in Plymouth. Finding the northeast corner of said lot, he runs the line dividing it from No. 1, in the same range, to the northwest corner of lot No. 2, and the southwest corner of lot No. 1. After some delay he also finds there a spruce tree, fallen and partly de-

cayed, and with *marks* apparently made with a marking iron on two pieces thereof; the one mark representing I, the other II.   These marks were examined by the surveyor, and the witness who was then with him.   Cummings then pronounced this spruce tree to have been the corner of lots 1 and 2.   Cummings is now dead; was not interested as owner in either lot.   Had surveyed many of the lots in that part of the town; uncertain whether he had before surveyed either of these lots where the line was in dispute.   Under the facts, as here disclosed, it is not necessary that the testimony of the witness should be regarded as conveying the *opinion* of an *expert*, but rather as the statement or assertion of a distinct fact within the knowledge of the surveyor.   When the object of the surveyor's search was found, with its significant marks upon it, he proclaimed that the spruce tree was the corner of lots 1 and 2.   The witness may not only now state what was then found, but also what was then said.   The act and declaration are inseparable, and explain or elucidate each other.   *Sessions* v. *Little*, 9 N. H. 271. We think the witness was properly allowed to state both the *acts* and the *declaration* of the deceased surveyor, and that our construction of the facts of the case harmonizes with the case *Wallace* v. *Goodall*, before quoted on this point.   We need not go so far as the court in Massachusetts do, in the case *Davis* v. *Mason*, 4 Pick. 156.

3.   It does not appear from the case, that Penniman's testimony did, in any material respect, apply to or affect the issue before the court.

A verdict will not be set aside on account of the introduction of immaterial testimony.   *Clement* v. *Brooks*, 13 N. H. 92.   There must, therefore, be

*Judgment on the verdict.*